[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 15, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-16173
Non-Argument Calendar

_____

D.C. Docket No. 03-00892-CV-CAM-1

GARY W. WILLIAMS,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 15, 2005)**

Before TJOLFAT, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Gary W. Williams appeals the order of the district court that affirmed the

denial of his application for social security disability insurance benefits.  Because

the denial of Williams's disability insurance benefits was supported by substantial evidence and the Administrative Law Judge applied the correct legal standards, we affirm.

## I. STANDARD OF REVIEW

We review a social security appeal to determine whether the decision of the ALJ is supported by substantial evidence and whether the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "such relevant evidence as the reasonable mind might accept as adequate to support a conclusion." Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982). We review de novo the decision of the district court regarding whether substantial evidence supports the findings. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

## II. DISCUSSION

Williams raises three arguments on appeal. He first contends that the ALJ erred because the ALJ substituted his own personal opinion for that of Williams's examining psychologist. Williams next argues that the ALJ failed to consider all the evidence in rejecting Williams's complaints of disabling back pain. Finally, Williams contends that the hypothetical question posed by the ALJ to the

2

vocational expert was inaccurate and incomplete.   We address each argument in turn.

*A.  Substitution of Personal Opinion for Medical Opinion*

Williams argues that the ALJ improperly "substituted his own opinion for that of a qualified psychologist, despite the absence of any medical or psychological evidence in support of the ALJ's opinion."  He contends that the ALJ failed to cite or apply the proper legal standard in rejecting the conclusion of Dr. Robert T. Shepherd that Williams has a generalized anxiety disorder, chronic dysthmia, and a major depressive disorder.  Williams also argues that the ALJ erred when he did not find Williams's borderline intelligence to be a severe impairment.

At the outset, we reject Williams's assertion that the ALJ failed to cite or apply the proper legal standard.  The ALJ explicitly cited the proper regulations for evaluation of medical opinions as well as the applicable Social Security Rulings.  The ALJ correctly explained that he was required to "consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairment and resulting limitations."

We also reject Williams's argument that the ALJ substituted his own opinion for that of a qualified psychologist. An ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring). Nonetheless, an ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). After discussing Dr. Shepherd's findings and diagnoses in detail, the ALJ explained that he assigned little weight to Dr. Shepherd's opinion because "they are not reasonably supported by the record as whole." Substantial evidence supports this determination.

Dr. Shepherd concluded that Williams suffered from depression and anxiety and that he had a borderline intellect. The ALJ noted that there were no other medical records to support Dr. Shepherd's opinion regarding depression and anxiety. There was no evidence that Williams ever sought or received medical treatment for depression or anxiety. In addition, Williams testified at the hearing that he did not feel stressed. The record also contains the opinion of Williams's treating physician that Williams exaggerated his symptoms of pain.

Although Williams contends that the ALJ ignored evidence that Dr. Sam A. Khair, an internist, that Williams was depressed, Dr. Khair's notes are

4

inconclusive. Dr. Khair's examined Williams in August 1997 and reported that Williams "denies ahedonia or suicidal ideations," but stated "start Prozac and Pro-partners." A couple of months later, Dr. Khair reexamined Williams for back pain, prescribed Daypro, and stated that if Daypro did not help in two weeks that they would try an antidepressant like Prozac. There is no evidence that Dr. Khair ever prescribed Prozac for Williams. That Dr. Khair contemplated prescribing an antidepressant does not support Dr. Shepherd's conclusion.

We also reject Williams's argument that the ALJ erred when he did not find that Williams's low I.Q. constituted a severe impairment. The Act defines a non-severe impairment as an impairment or combination of impairments that "does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). In addition, a claimant is presumptively disabled when he presents a valid verbal, performance, or full scale I.Q. of 60 to 70 and a physical or other mental impairment that imposes an additional and significant work-related limitation of function. See Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Williams has a verbal I.Q. of 71, performance I.Q. of 84, and full scale I.Q. of 75, all of which are above the range for presuming disability. Williams's low I.Q. did not prevent him from working in the past as a painter and warehouse

worker. Substantial evidence supports the finding of the ALJ that Williams's low

I.Q. did not constitute a severe impairment.

*B. Subjective Complaints of Pain*

Williams contends that the ALJ improperly rejected his subjective

complaints of back pain and resulting limitations. He asserts that the ALJ ignored

the evidence from Dr. R.V. Nair who recommended long term partial disability for

Williams with light duty placement. He also contends that the ALJ improperly

relied on the statement of his treating physician, Dr. Jon Finley, in determining

that Williams's subjective complaints were exaggerated and out of proportion with

the MRI findings.

"[T]o establish a disability based on testimony of pain and other symptoms,

the claimant must satisfy two parts of a three-part test showing: (1) evidence of an

underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged pain; or (b) that the objectively determined

medical condition can reasonably be expected to give rise to the claimed pain."

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted).

"After considering a claimant's complaints of pain, the ALJ may reject them as not

creditable, and that determination will be reviewed for substantial evidence."

Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citation omitted). If the

ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for this decision. See Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. See Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ properly rejected Williams's subjective testimony about his symptoms because substantial evidence existed in the record to determine that Williams's claims of pain were not credible to the extent he alleged. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Although Williams presented evidence of an underlying medical condition, substantial evidence supports the finding of the ALJ that he did not establish "(a) objective medical evidence confirming the severity of the alleged pain[,] or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson, 284 F.3d at 1225. Nothing in Dr. Nair's statement advising light placement duty "with caution lifting, bending and stooping over" contradicts the finding of the ALJ that Williams was capable of performing a modified range of work. In addition, the progress notes from Dr. Finley, who treated and evaluated Williams for almost two years, contained no restrictions on Williams's ability to stand, walk, or lift. Dr. Finley's evaluation of a 1998 MRI showed no large

7

herniation, no evidence of significant stenosis, and not evidence of significant degenerative disk disease.  Dr. Finley also reported that Williams had exaggerated complaints of pain that were out of proportion with the MRI results and x-ray examinations.  The 2001 MRI does not change this analysis.  We conclude that substantial evidence existed in the record to determine that Williams's claims of pain were not credible to the extent he alleged.

### C.  Incomplete Hypothetical

After a claimant has established some disability that prevents him from performing his past relevant work, the burden shifts to the ALJ to demonstrate the existence of a significant number of jobs in the national economy that the claimant can perform.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  One of the methods used to show that the claimant can perform other jobs is through the testimony of a vocational expert.  Id. at 1229.  "In order for a [vocational expert]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Id.  "Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform."  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  The ALJ uses hypothetical questions to determine whether someone with the same limitations as the claimant

would be able to secure employment in the national economy.  See id.   After the ALJ identifies alternative work, the burden shifts to the claimant to demonstrate that he is unable to perform those jobs.  Id.

Williams argues that the hypothetical question posed by the ALJ to the vocation expert was inaccurate and incomplete because the ALJ did not include (1) that Williams reads at a fourth grade level, (2) that he is borderline retarded, (3) the frequency that Williams needs to alternate sitting and standing, and (4) any reference to pain.  We address each objection separately.

It is undisputed that Williams completed the ninth grade.  Dr. Shepherd found that Williams's spelling skills were at a fourth grade level and his arithmetic skills were at a sixth grade level.  Assuming, as Williams argues, that Williams reads on a fourth grade level, this omission was harmless because it would not have altered the testimony of the vocational expert.   See Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991); Ware v. Schweiker, 651 F.2d 408, 412 (5th Cir. Unit A July 1981).  The Act defines a fourth grade level of education as "marginal"; an individual with a marginal education has "ability in reasoning, arithmetic, and language skills which are needed to do simple unskilled types of jobs."  20 C.F.R. § 404.1564(b)(2).  The only types of jobs identified by the vocational expert were unskilled jobs.

9

The failure of the ALJ to include in the hypothetical Williams's low I.Q. was also harmless. Williams failed to show that the omission would have changed the testimony of the vocational expert. As stated above, the only jobs identified by the vocation expert were unskilled jobs. There is nothing in the record to suggest that Williams's low I.Q. would prevent him from performing these jobs. Instead, the record shows that Williams could perform these jobs. Before his back injury, Williams was a painter and a warehouse worker. He testified that he does not have a problem with stress, and that he could finish a task assigned to him within a given time frame, although he "might be slow." Williams also testified that he and his wife home school their teenage daughter, and that it is not too often that his daughter asks for assistance that he cannot provide her. Williams failed to establish that his low I.Q. would prevent him from performing the jobs identified by the vocational expert. See Jones, 190 F.3d at 1228.

As to Williams's need to change positions at work, the ALJ stated in his hypothetical that "the job would either by his [sic] nature, afford an opportunity to change positions by the way its typically performed, or that it would have what's typically called a sit/stand option as far as being able to perform the work." Although the ALJ failed to specify the frequency that Williams needed to change his sit/stand position, the reasonable implication of the ALJ's description was that

10

the sit/stand option would be at Williams's own volition. This implication satisfies Williams's needs. In addition, Williams failed to offer any evidence that he could not perform the unskilled jobs identified by the vocational expert based on his ability to sit or stand for any period of time. This failure prohibits Williams from establishing his burden of his inability to perform the identified jobs. See id.

Finally, although the ALJ did not make any specific reference to Williams's pain in the hypothetical, the hypothetical implicitly takes into account Williams's pain by limiting the amount of weight that can be lifted and the frequency of bending, twisting, or stooping involved. In addition, Williams has failed to show that his pain would prevent him from performing the jobs identified by the vocational expert. Williams, therefore, failed to carry his burden of showing that he is unable to perform the identified jobs. See id.

## III. CONCLUSION

Based on the foregoing, the denial of disability insurance benefits to Williams is **AFFIRMED.**

11